UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X

GRACE GARDNER and CORNELIA JEFFRIES,

       Plaintiffs,  **FIRST AMENDED**
               **COMPLAINT**

    -against-     10-cv-1569-JGK

THE CITY OF NEW YORK; INSPECTOR DWAYNE
MONTGOMERY; SGT. THOMAS ALPS, Tax #
926498; SGT. MILLER; P.O. GUIDO; P.O. ECF Case
TEJADA; P.O. COUSINHAYES; P.O. FURBUSH;
P.O. VALERIO; and P.O. SCOTT ROTHMANN, Jury Trial Demanded
Shield # 16360, the individual
defendant(s) sued individually and in
their official capacities,

       Defendants.

--------------------------------------- X

**PRELIMINARY STATEMENT**

   1. This is a civil rights action in which plaintiffs
seek relief for the violation of their rights secured by 42
U.S.C. §§ 1983 and 1985(3), and the First, Fourth, Fifth, Sixth,
and Fourteenth Amendments to the United States Constitution, and
the laws of the State of New York.  The claims arise from an
incident, which occurred on or about September 4, 2008 through
on or about January 12, 2009.  During the incident the City of
New York, and members of the New York City Police Department
("NYPD") subjected plaintiffs to, among other things, false
arrest, excessive force, malicious prosecution, unlawful search
and seizure, retaliation for free speech, conspiracy, gross
negligence, intentional and negligent infliction of emotional

distress, negligent hiring and retention of incompetent and unfit employees, negligent supervision, training and instruction of employees, and implementation and continuation of an unlawful municipal policy, practice, and custom.  Plaintiffs seek compensatory and punitive damages, declaratory relief, an award of costs and attorney's fees, and such other and further relief as the Court deems just and proper.

<u>**JURISDICTION & VENUE**</u>

2.   This action is brought pursuant to 42 U.S.C. §§ 1983 and 1985(3), and the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by the aforesaid statutes and 28 U.S.C. §§ 1331 and 1343.

3.   With respect to plaintiffs' state law claims from January 12, 2009, plaintiffs invoke the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide claims arising under state law (malicious prosecution, gross negligence, intentional and negligent infliction of emotional distress, negligent hiring and retention of incompetent and unfit employees, negligent supervision, training and instruction of employees).  A notice of claim was duly filed on the City of New York within 90 days of the incident at issue, more than 30 days have elapsed since such

2

filing and the City has refused to settle plaintiffs' claims. Moreover, this action has been filed within one year and 90 days of the incidents that are the basis of this claim.

4.   Venue is proper here pursuant to 28 U.S.C. § 1391 because some of the acts in question occurred in New York County, and the City of New York is subject to personal jurisdiction in the Southern District of New York.

<u>**PARTIES**</u>

5.   Plaintiff Grace Gardner is a resident of the State of New York, New York County.

6.   Plaintiff Cornelia Jeffries is a resident of the State of New York, New York County.

7.   Defendant City of New York is a municipal corporation organized under the laws of the State of New York, which violated plaintiffs' rights as described herein.

8.   Defendant Inspector Dwayne Montgomery is a New York City Police Officer, employed with the 28th Precinct located in New York, New York or other as yet unknown NYPD assignment, who violated plaintiffs' rights as described herein.

9.   Defendant Sergeant Thomas Alps is a New York City Police Officer, assigned Tax # 926498, employed with the 28th Precinct located in New York, New York or other as yet unknown NYPD assignment, who violated plaintiffs' rights as described herein.

3

10.   Defendant Sergeant Miller is a New York City Police Officer, employed with the 28th Precinct located in New York, New York or other as yet unknown NYPD assignment, who violated plaintiffs' rights as described herein.

11.   Defendant P.O. Guido is a New York City Police Officer, employed with the 28th Precinct located in New York, New York or other as yet unknown NYPD assignment, who violated plaintiffs' rights as described herein.

12.   Defendant P.O. Tejada is a New York City Police Officer, employed with the 28th Precinct located in New York, New York or other as yet unknown NYPD assignment, who violated plaintiffs' rights as described herein.

13.   Defendant P.O. Cousinhayes is a New York City Police Officer, employed with the 28th Precinct located in New York, New York or other as yet unknown NYPD assignment, who violated plaintiffs' rights as described herein.

14.   Defendant P.O. Furbush is a New York City Police Officer, employed with the 28th Precinct located in New York, New York or other as yet unknown NYPD assignment, who violated plaintiffs' rights as described herein.

15.   Defendant P.O. Valerio is a New York City Police Officer, employed with the 28th Precinct located in New York, New York or other as yet unknown NYPD assignment, who violated plaintiffs' rights as described herein.

4

16.   Defendant P.O. Scott Rothmann is a New York City Police Officer, assigned Shield # 16360, employed with the 28th Precinct located in New York, New York who violated plaintiffs' rights as described herein.

17.   The individual defendant(s) are sued in their individual and official capacities.

### STATEMENT OF FACTS

18.   The following is a summary set for the purpose of demonstrating and providing notice of plaintiffs' claims against the defendants.  Plaintiffs have not set forth each and every fact concerning the incident(s) described below.

19.   On September 4, 2008 at approximately 11:55 p.m. at and in the vicinity of 232 West 122nd Street, Apt. # 2A, New York, New York, several police officers operating from the 28th Precinct, including upon information and belief, defendants Inspector Montgomery, Sgt. Alps, Sgt. Miller, P.O. Guido, P.O. Tejada, P.O. Cousinhayes, P.O. Furbush, P.O. Valerio, and P.O Rothmann, without either consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiffs (or any third person) had committed a crime, unlawfully entered 232 West 122nd Street, Apt. # 2A, New York, New York ("the apartment").

20.   While entering the apartment, the police officers, including defendants Inspector Montgomery, Sgt. Alps,

5

Sgt. Miller, P.O. Guido, P.O. Tejada, P.O. Cousinhayes, P.O. Furbush, P.O. Valerio, and P.O Rothmann, maliciously and unnecessarily broke the apartment door, entered the apartment with shields and helmets, and drew their firearms at plaintiffs.

21.   Once the defendants entered the apartment, plaintiffs were not free to disregard the questions of the police officers, including defendants Inspector Montgomery, Sgt. Alps, Sgt. Miller, P.O. Guido, P.O. Tejada, P.O. Cousinhayes, P.O. Furbush, P.O. Valerio, and P.O Rothmann, or walk way or leave the scene.

22.   While inside the apartment, the police officers, including defendants Inspector Montgomery, Sgt. Alps, Sgt. Miller, P.O. Guido, P.O. Tejada, P.O. Cousinhayes, P.O. Furbush, P.O. Valerio, and P.O Rothmann, without either consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiffs (or any third person) had committed a crime falsely arrested plaintiffs.

23.   During the arrest of plaintiff Grace Gardner, the police officers, including defendants Inspector Montgomery, Sgt. Alps, Sgt. Miller, P.O. Guido, P.O. Tejada, P.O. Cousinhayes, P.O. Furbush, P.O. Valerio, and P.O Rothmann, maliciously, gratuitously, and unnecessarily grabbed plaintiff while in her underwear, pointed a firearm at her head, pushed plaintiff to the ground, and placed excessively tight handcuffs on

plaintiff's wrists.  Those defendants who did not touch plaintiff, witnessed these acts, but failed to intervene and protect plaintiff from this conduct.

24.  During the arrest of plaintiff Cornelia Jeffries, the police officers, including defendants Inspector Montgomery, Sgt. Alps, Sgt. Miller, P.O. Guido, P.O. Tejada, P.O. Cousinhayes, P.O. Furbush, P.O. Valerio, and P.O Rothmann, maliciously, gratuitously, and unnecessarily pulled plaintiff off her bed, while she was naked, and placed excessively tight handcuffs on plaintiff's wrists.  Those defendants who did not touch plaintiff, witnessed these acts, but failed to intervene and protect plaintiff from this conduct.

25.  The individual defendant officers did not have an objective and/or reasonable basis to use any degree of force against plaintiffs, since plaintiffs were unarmed, compliant, did not resist arrest, and the officers used force against plaintiffs without informing them that they were being arrested or detained.

26.  Plaintiffs were physically injured as a result of the excessive use of force.

27.  Plaintiffs complained to the police officers that their actions were illegal.

28.  Plaintiffs asked to be allowed to get dressed, but the officers, unreasonably and unnecessarily, refused this

request for approximately 20 minutes while they searched the
apartment.

29.   While searching the apartment, the police
officers, including defendants Inspector Montgomery, Sgt. Alps,
Sgt. Miller, P.O. Guido, P.O. Tejada, P.O. Cousinhayes, P.O.
Furbush, P.O. Valerio, and P.O Rothmann, unreasonably,
maliciously, and unnecessarily damaged plaintiffs' personal
property, furniture and fixtures, including shelves.

30.   Thereafter, the police officers, including
defendants Inspector Montgomery, Sgt. Alps, Sgt. Miller, P.O.
Guido, P.O. Tejada, P.O. Cousinhayes, P.O. Furbush, P.O.
Valerio, and P.O Rothmann, transported plaintiffs to the 28th
Precinct, where plaintiffs were processed and released with desk
appearance tickets to appear in the Criminal Court of the City
of New York, County of New York.

31.   The first date plaintiffs appeared at Criminal
Court, they were informed that there was no affidavit in support
of their arrests, and they had to return to court.

32.   Thereafter, upon information and belief, on or
about October 22, 2008, the police officers, including
defendants Inspector Montgomery, Sgt. Alps, Sgt. Miller, P.O.
Guido, P.O. Tejada, P.O. Cousinhayes, P.O. Furbush, P.O.
Valerio, and P.O Rothmann, pursuant to a conspiracy, falsely and
maliciously told the New York County District Attorney's Office

that plaintiffs had committed a crime, by filing an affidavit that falsely stated that the police had recovered 19 bags of crack cocaine from the apartment; and based on the these false allegations the New York County District Attorney's Office initiated a prosecution against plaintiffs under Docket # 2008NY079999 (Gardner) and Docket # 2008NY079994 (Jeffries).

33.   The police officers, including defendants Inspector Montgomery, Sgt. Alps, Sgt. Miller, P.O. Guido, P.O. Tejada, P.O. Cousinhayes, P.O. Furbush, P.O. Valerio, and P.O Rothmann, intentionally, knowingly and purposely provided false statements and information to cause plaintiffs to be prosecuted, to cover up that their search of the apartment produced no evidence of a crime.

34.   The police officers, including defendants Inspector Montgomery, Sgt. Alps, Sgt. Miller, P.O. Guido, P.O. Tejada, P.O. Cousinhayes, P.O. Furbush, P.O. Valerio, and P.O Rothmann, initiated the above-stated malicious prosecution against plaintiffs.

35.   The police officers, including defendants Inspector Montgomery, Sgt. Alps, Sgt. Miller, P.O. Guido, P.O. Tejada, P.O. Cousinhayes, P.O. Furbush, P.O. Valerio, and P.O Rothmann, lacked probable cause to believe the above-stated malicious prosecutions could succeed.

36.  The police officers, including defendants
Inspector Montgomery, Sgt. Alps, Sgt. Miller, P.O. Guido, P.O.
Tejada, P.O. Cousinhayes, P.O. Furbush, P.O. Valerio, and P.O
Rothmann, acted with malice by initiating the above-stated
malicious prosecutions, to hide that their search of the
apartment produced no evidence of a crime.

37.  The above-stated malicious prosecutions caused a
sufficient post-arraignment liberty restraint on plaintiffs.

38.  On or about January 12, 2009, the above-stated
malicious prosecutions, initiated by the police officers,
including defendants Inspector Montgomery, Sgt. Alps, Sgt.
Miller, P.O. Guido, P.O. Tejada, P.O. Cousinhayes, P.O. Furbush,
P.O. Valerio, and P.O Rothmann, terminated in plaintiffs' favor,
when they were dismissed in their entirety, after the District
Attorney did not produce a lab report concerning the alleged
crack cocaine the police officers falsely claimed to have found
in the apartment.

39.  The aforesaid events are not an isolated
incident.  Defendant City of New York is aware (from lawsuits,
notices of claim and complaints filed with the Civilian
Complaint Review Board) that many of the NYPD's officers are
insufficiently trained on the proper way to use force,
investigate an incident, and how to treat innocent and/or
uninvolved individuals who are found at an incident location.

10

40.   Defendant City of New York is further aware that such improper training has often resulted in a deprivation of civil rights.  Despite such notice, City of New York has failed to take corrective action.   This failure caused the officers in the present case to violate the plaintiffs' civil rights.

41.   Moreover, upon information and belief, defendant City of New York was aware prior to the incident that the individual defendants lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as officers.  Despite such notice, City of New York has retained these officers, and failed to adequately train and supervise them.

42.   The individual defendants acted in concert committing the above-described illegal acts toward plaintiffs.

43.   Plaintiffs did not resist arrest at any time during the above incidents.

44.   Plaintiffs did not violate any law, regulation, or administrative code; commit any criminal act; or act in a suspicious or unlawful manner prior to or during the above incidents.

45.   The individual defendants did not observe plaintiffs violate any law, regulation, or administrative code; commit any criminal act; or act in a suspicious or unlawful manner prior to or during the above incidents.

11

46.   At no time prior to, during or after the above incidents were the individual defendants provided with information, or in receipt of a credible or an objectively reasonable complaint from a third person, that plaintiffs had violated any law, regulation, or administrative code; commit any criminal act; or act in a suspicious or unlawful manner prior to or during the above incidents.

47.   As a result of defendants' actions plaintiffs experienced personal and physical injuries, pain and suffering, fear, an invasion of privacy, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

### FEDERAL AND STATE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

48.   Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

49.   The conduct of defendant officers, as described herein, amounted to: false arrest, excessive force, malicious prosecution, unlawful search and seizure, retaliation for free speech, conspiracy, gross negligence, intentional and negligent infliction of emotional distress, negligent hiring and retention of incompetent and unfit employees, negligent supervision, training and instruction of employees, and implementation and

12

continuation of an unlawful municipal policy, practice, and
custom.

50.  The conduct of the defendant officers, as
described herein, violated plaintiffs' rights under 42 U.S.C. §§
1983, 1985(3) and 1988; the First, Fourth, Fifth, Sixth; and New
York State law, by committing: false arrest, excessive force,
malicious prosecution, unlawful search and seizure, retaliation
for free speech, conspiracy, gross negligence, intentional and
negligent infliction of emotional distress, negligent hiring and
retention of incompetent and unfit employees, negligent
supervision, training and instruction of employees, and
implementation and continuation of an unlawful municipal policy,
practice, and custom.

51.  Defendants acted under pretense and color of
state law and their individual and official capacities and
within the scope of their employment.  Said acts by said
defendants were beyond the scope of their jurisdiction, without
authority or law, and in abuse of their powers, and said
defendants acted willfully, knowingly, and with the specific
intent to deprive plaintiffs of their rights secured by 42
U.S.C. §§ 1983 and 1985(3); the First Fourth, Fifth, Sixth, and
Fourteenth Amendments to the United States Constitution; and the
laws of the State of New York.

52.   As a direct and proximate result of the misconduct and abuse detailed above, plaintiffs experienced personal and physical injuries, pain and suffering, fear, an invasion of privacy, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

53.   The plaintiffs are also entitled to receive punitive damages because defendants' actions were motivated by extreme recklessness and indifference to the plaintiffs' rights.

**FEDERAL AND STATE CLAIMS AGAINST THE CITY OF NEW YORK**

54.   Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

55.   The City of New York directly caused the constitutional violations suffered by plaintiffs.

56.   Upon information and belief, the City of New York was aware from notices of claim, lawsuits, complaints, and from NYPD's own observations, that the officers involved in the present case were unfit to be officers, and that it was highly likely that they would commit the acts alleged in the present case.

57.   Nevertheless, the City of New York exercised deliberate indifference by failing to take remedial action.  The City of New York failed to properly train, retrain, supervise, discipline, monitor, and improperly utilized and retained these

14

officers.   Moreover, upon information and belief, the City of New York failed to adequately investigate prior complaints against the officers and created a culture where officers can harass, and violate individuals without consequence.   Indeed, when individuals file complaints against officers, the City has a practice of failing to substantiate or address the complaint, even under circumstances where the complaint is corroborated and credible, and the account given by the officer is unworthy of belief.

58.   The aforesaid conduct by the City of New York violated plaintiffs' rights under 42 U.S.C. §§ 1983 and 1985(3); the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; and the laws of the State of New York.

59.   Moreover, the aforesaid conduct by the City of New York amounted to gross negligence, intentional and negligent infliction of emotional distress, negligent hiring and retention of incompetent and unfit employees, negligent supervision, training and instruction of employees, and implementation and continuation of an unlawful municipal policy, practice, and custom.

60.   Finally, under state law, the City of New York is responsible for its employees' actions under the doctrine of respondeat superior.

WHEREFORE, plaintiffs demand a jury trial and the following relief jointly and severally against the defendants:

a.   Compensatory damages in an amount to be determined by a jury;

b.   Punitive damages in an amount to be determined by a jury;

c.   Costs, interest and attorney's fees; and

d.   Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

DATED:   New York, New York
         July 16, 2010

> MICHAEL HUESTON, ESQ.
> *Attorney for Plaintiffs*
> 350 Fifth Avenue, Suite 4810
> New York, New York 10118
> (212) 643-2900
> mhueston@nyc.rr.com
> By:
>
>
> _____s/_____
> MICHAEL O. HUESTON

16